**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**
**BATON ROUGE DIVISION**

| | | |
|---|---|---|
| TERRANCE PATRICK ESFELLER | ) | Civil Action Number_____ |
|     Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| SEAN O'KEEFE | ) | |
| in his official capacity as the Chancellor of | ) | |
| Louisiana State University, Baton Rouge, | ) | |
|     and | ) | |
| The Board of Supervisors for | ) | |
| Louisiana State University and | ) | |
| Agricultural and Mechanical College | ) | |
| | ) | |
|     Defendants. | ) | |

## COMPLAINT

For his complaint against THE BOARD OF SUPERVISORS FOR LOUISIANA STATE UNIVERISTY AND AGRICULTURAL AND MECHANICAL COLLEGE (the "Board") and SEAN O'KEEFE ("Chancellor"), Plaintiff TERRANCE PATRICK ESFELLER represents as follows:

## JURISDICTION AND VENUE

1. Jurisdiction in this matter is conferred upon this Court pursuant to 28 U.S.C. §1331 and the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988.

2. Venue lies in the Middle District of Louisiana pursuant to 28 U.S. C. §1391(b) as all defendants reside within the district and all acts detailed herein occurred in the district.

## PARTIES

3. Plaintiff TERRANCE PATRICK ESFELLER is a junior at Louisiana State University and Agricultural and Mechanical College in Baton Rouge (the "University").

1

4. Defendant BOARD OF SUPERVISORS FOR LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE is a board of higher education organized and existing under the laws of Louisiana.

5. Defendant SEAN O'KEEFE is the Chancellor of the University.

## FACTS

### A. The Code of Student Conduct

6. Pursuant to the University's Code of Student Conduct, (the "Code"), which is issued by the Office of the Chancellor, the Board "has the authority to exercise all powers to direct, control, supervise, and manage all institutions of higher learning under its control, which includes Louisiana State University and Agricultural & Mechanical College in Baton Rouge."

7. The Code also states that the ""Bylaws and Regulations of the Board of Supervisors" authorize the Chancellor to administer the affairs of the campus, subject to the direction and control of the President of the LSU System and the Board of Supervisors. Thus, authority to take such actions necessary to accomplish the University's educational mission has been delegated to the Chancellor."

8. The Code establishes procedures to "protect the academic environment of the campus and the health and safety of all members of the University community," through a disciplinary process enumerated within the Code.

9. The Code sets a list of academic and non-academic misconduct which if violated, will subject students to the disciplinary process.

10. The Office of Judicial Affairs ("Judicial Affairs"), which is under the purview of the Office of the Dean of Students within the Division of Student Life and

Academic Services, "is responsible for investigating alleged violations of University rules and for implementing the discipline process."

### B. Plaintiff's Disciplinary Proceedings

11. On November 22, 2006, Judicial Affairs charged plaintiff with four violations of non-academic misconduct enumerate in paragraphs 12-15 herein.

12. Judicial Affairs charged plaintiff with "Extreme, outrageous or persistent acts, or communications that are intended or reasonably likely to harass, intimidate, harm, or humiliate another."

13. Judicial Affairs also charged plaintiff with "Committing an act or an attempting to commit an act on campus that would be in violation of city, parish, state, or federal law."

14. Judicial Affairs also charged plaintiff with "Attempting to commit or assisting with the commission or attempted commission of any of the foregoing listed offenses."

15. Judicial Affairs also charged plaintiff with "Violating any rule and/or regulation of the University, including, but not limited to, administrative rules of campus offices."

16. On November 27, 2006, plaintiff met with Dr. Eric Norman, Associate Dean of Students and Director of Judicial Affairs, to discuss the alleged violations. During this discussion, plaintiff was never given notice of which city, parish, state, or federal law he had allegedly violated, nor was he given notice about which rule and/or regulation of the University, including, but not limited to, administrative rules of campus offices he had

allegedly violated, despite being charged with violations of said rules/laws by Judicial Affairs.

17. On December 5, 2006, plaintiff met with Dr. Norman to discuss the progress of the case. During that meeting, Dr. Norman accused plaintiff of seeking legal action against the University, and more specifically against Dr. Norman himself. Dr. Norman threatened plaintiff with more severe punishments if any legal recourse were sought after.

18. While conducting his investigation, Dr. Norman failed to interview any of the plaintiff's witnesses prior to rendering a decision in plaintiff's case.

19. On January 8, 2007, plaintiff met with Dr. Norman to discuss the findings of the investigation. Dr. Norman found plaintiff in violation of the Code, specifically paragraph 11 listed above, and informed plaintiff of his options.

20. Dr. Norman proposed a sanction of one year of disciplinary probation, along with enrollment and attendance in an anger management course.

21. Plaintiff rejected the sanctions on January 8, 2007, and requested a hearing before a panel to decide upon the charges made against him.

22. On January 15, 2007, plaintiff met with representatives of the school newspaper, The Daily Reveille, to discuss what he felt was mistreatment by the Office of Judicial Affairs. The plaintiff was asked to sign a release granting reporters access to his disciplinary records.

23. On January 19, 2007, Dr. Norman e-mailed the plaintiff threatening him with additional charges should he choose to make his case public.

24. On March 5, 2007, plaintiff was asked to meet with Mrs. Rosemary Blum, Associate Director of Judicial Affairs, in order for a second investigation to be made into

the case.

25. During the course of her investigation, Mrs. Blum went so far as to look into allegations concerning abuse of one of the plaintiff's children. Mrs. Blum made contact with the child care facility and began questioning the teacher and administrator of the facility about the well-being of plaintiff's child, violating plaintiff's right to privacy.

26. During the course of her investigation, Mrs. Blum also questioned the witnesses of the plaintiff regarding the treatment and discipline of his children.

27. After her investigation, Mrs. Blum found plaintiff in violation of the Code, specifically item #11 above, and told him the options he had insofar as sanctions.

28. Mrs. Blum found plaintiff guilty of the above listed paragraph 11 due to a statement plaintiff made concerning testifying in a civil court hearing against the complainant in his case with the Office of Judicial Affairs.

29. Mrs. Blum proposed a sanction matching that of Dr. Norman's, one year of disciplinary probation combined with enrollment and attendance in an anger management course.

30. Plaintiff informed Mrs. Blum that her decision was not in compliance with previous sanctions handed down by her office as plaintiff knew of another student with a similar situation who was handed a lesser penalty of disciplinary warning for one semester.

31. Mrs. Blum offered to match the lesser penalty of disciplinary warning through August 1, 2007, along with the completion of the anger management course in exchange for plaintiff's admission of guilt and acceptance of charges brought against

him.

32. Plaintiff rejected the sanctions and requested a hearing before a panel to decide upon the charges made against him.

33. Judicial Affairs denied plaintiff copies of all of the evidence to be used against him prior to the hearing.

34. Judicial Affairs conducted a hearing before a panel in plaintiff's absence on July 27, 2007, after plaintiff gave reasonable notification that he would not be able to attend the hearing due to work and financial reasons.

35. The hearing was held without any consideration being taken for the reasons regarding plaintiff's absence from the hearing panel proceedings, thus denying plaintiff the right to defend himself against the allegations being made.

36. Plaintiff provided the hearing panel with documentation from the LSU Office of Psychological Services stating that he had undergone testing with that office, in which it was discovered that plaintiff did not have an anger management problem.

37. The hearing panel met and found plaintiff in violation of all four previously mentioned provisions of the Code. The hearing panel did not have access to all the evidence nor were they able to hear statements by the person given plaintiff's power-of-attorney to address the matter in his absence.

38. Plaintiff was denied the right to representation by counsel during the proceedings.

39. Plaintiff was placed on disciplinary probation until completion of an anger management course, upon which time he would be placed on warning probation until

graduation.

40. Defendant's decision of disciplinary probation combined with warning probation was above and beyond those previously handed down by the Office of Judicial Affairs.

41. Immediately following deliberations of the hearing panel, Mrs. Blum disclosed the outcome of the plaintiff's disciplinary hearing to the original complainant in the matter, thus denying plaintiff rights afforded to him by the Family Educational Rights and Privacy Act of 1974 ("FERPA").

42. Plaintiff appealed the hearing panel decision to the Vice-Chancellor of Student Life and Academic Services, Dr. Neil Mathews, on August 13, 2007. Plaintiff argued that serious procedural errors had been made in his case. Vice-Chancellor Mathews denied plaintiff's appeal on September 21, 2007, citing a lack of "clear and convincing new evidence" in the case.

43. Plaintiff's appeal was made on the basis of procedural errors on the part of the Office of Judicial Affairs, specifically those pertaining to his due process rights and First Amendment rights to freedom of speech. The decision of the Vice-Chancellor made no recognition to these procedural errors, instead focusing on new evidence.

44. Thereafter, plaintiff sought a review of the matter by the Chancellor on September 25, 2007. The Chancellor denied plaintiff's appeal on December 21, 2007, which exhausted the administrative remedies permitted to plaintiff by the Code.

### **Count I, Violation of Plaintiff's Right to Free Speech and Due Process of Law (42 U.S.C. § 1983)**

45. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 44 of this Complaint.

46. By prohibiting "Extreme, outrageous or persistent acts, or communications that are intended or reasonably likely to harass, intimidate, harm, or humiliate another," Defendants, acting under color of state law, have enacted and enforced regulations that are both vague and overbroad thereby depriving Plaintiff of his due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and his right to freedom of speech guaranteed by the First Amendment of the United States Constitution.

47. Because of Defendants' actions, Plaintiff has suffered and continues to suffer irreparable injury which cannot be fully compensated by an award of money damages.

48. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to a preliminary and permanent injunction invaliding and restraining enforcement of the University's Code insofar as the overbroad and vague provision prohibiting "Extreme, outrageous or persistent acts, or communications that are intended or reasonably likely to harass, intimidate, harm, or humiliate another" against plaintiff and all other students. Furthermore, Plaintiff is entitled to monetary damages in an amount to be determined by the court as well as the costs of this lawsuit and reasonable attorneys' fees.

## **Count II, Violation of Plaintiff's Right to Due Process of Law (42 U.S.C. § 1983)**

49. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 48 of this Complaint.

50. By charging plaintiff with "Committing an act or an attempting to commit an act on campus that would be in violation of city, parish, state, or federal law" as well as

"Violating any rule and/or regulation of the University, including, but not limited to, administrative rules of campus offices," without actually giving notice to plaintiff as to which of the thousands of laws and/or rules that were in question, defendants, acting under color of state law, have failed to give plaintiff reasonable notice of the charges against him so as to allow a reasonable defense thereby violating defendant's right to due process of the law guaranteed by the Fourteenth Amendment to the United States Constitution.

51. Because of Defendants' actions, Plaintiff has suffered and continues to suffer irreparable injury which cannot be fully compensated by an award of money damages.

52. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to a preliminary and permanent injunction invaliding and restraining enforcement of the sanctions imposed upon Plaintiff by the University as the proceedings held against him denied him his due process rights. Furthermore, Plaintiff is entitled to monetary damages in an amount to be determined by the court as well as the costs of this lawsuit and reasonable attorneys' fees.

### Count III, Violation of Plaintiff's Right to Property, Counsel and Due Process of Law (42 U.S.C. § 1983)

53. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 52 of this Complaint.

54. By denying Plaintiff the right to be heard concerning the charges brought against him, by denying Plaintiff the right to representation for the charges against him

and by committing acts which run afoul of Plaintiff's due process rights, Defendants, acting under color of state law, have deprived Plaintiff of a vested property interest without due process of the law guaranteed to him by the Fifth Amendment to the United States Constitution, prevented Plaintiff from representation by counsel guaranteed to him by the Sixth Amendment to the United States Constitution and committed egregious procedural errors in the prosecution of the charges against him thereby violating his due process of the law guaranteed by the Fourteenth Amendment to the United States Constitution.

55. Because of Defendants' actions, Plaintiff has suffered and continues to suffer irreparable injury which cannot be fully compensated by an award of money damages.

56. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to a preliminary and permanent injunction invaliding and restraining enforcement of the sanctions imposed upon Plaintiff by the University as the proceedings held against him denied him his right to counsel, right to property and his due process rights. Furthermore, Plaintiff is entitled to monetary damages in an amount to be determined by the court as well as the costs of this lawsuit and reasonable attorneys' fees.

## Count IV, Violation of Plaintiff's Right to Privacy under the Family Educational Rights and Privacy Act (42 U.S.C. § 1983) & (20 U.S.C. § 1232g)

57. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 56 of this Complaint.

58. By sharing information about the outcome of Plaintiff's hearing with the person who made the complaint against him and by inquiring about alleged abuse by

Plaintiff against his child, Defendants, acting under color of state law, violated Plaintiff's right to privacy guaranteed by the Family Educational Rights and Privacy Act and the United States Constitution.

59. Because of Defendants' actions, Plaintiff has suffered and continues to suffer irreparable injury which cannot be fully compensated by an award of money damages.

60. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to a preliminary and permanent injunction invaliding and restraining enforcement of the sanctions imposed upon Plaintiff by the University as the proceedings held against him were a violation of his rights to privacy. Furthermore, Plaintiff is entitled to monetary damages in an amount to be determined by the court as well as the costs of this lawsuit and reasonable attorneys' fees.

**RELIEF SOUGHT**

WHEREFORE, plaintiff respectfully prays that the Court grant him the following relief:

A. Issue a preliminary and permanent injunction invalidating and restraining enforcement of the provisions of the University's Code of Student Conduct which restricts the free exercise of speech;

B. Issues a preliminary and permanent injunction restraining the University from taking any action against plaintiff as a result of being found in violation of the University Code of Student Conduct as it relates to the provisions of the Code which infringe upon plaintiff's free speech and due process rights;

C. Award attorney's fees and costs pursuant to 42 U.S.C. § 1988;

D. Award monetary damages in an amount to be determined by the Court;

E. Permit a trial by jury for all issues triable by such; and

E. Grant such other and additional relief as the Court deems just and proper.

        Respectfully Submitted,

        Donald Carl Hodge, Jr.
        Attorney for Plaintiff
        1900 South Acadian Thruway
        Baton Rouge, LA 70808
        Telephone: 225-303-8610
        Fax: 225-346-0020

By: <u>s/Donald Carl Hodge, Jr.</u>
    DONALD CARL HODGE, JR.
    Louisiana Bar No. 29251

PLEASE SERVE:

CHANCELLOR SEAN O'KEEFE
156 Thomas Boyd Hall
Baton Rouge, Louisiana 70803

THE BOARD OF SUPERVISORS FOR LOUISIANA STATE UNIVERISTY AND AGRICULTURAL AND MECHANICAL COLLEGE through its President, John Lombardi
3810 West Lakeshore Drive
Baton Rouge, Louisiana 70808