# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **TERRANCE PATRICK ESFELLER** | **CIVIL ACTION NO. 3:08-cv-63-JJB-CN** |
| **VERSUS** | **JUDGE BRADY** |
| **SEAN O'KEEFE AND THE BOARD OF SUPERVISORS FOR LOUISIANA STATE UNIVERSITY** | **MAGISTRATE JUDGE NOLAND** |

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

NOW INTO COURT, through undersigned counsel, comes Defendant, former chancellor

Sean O'Keefe, in his official capacity, who respectfully submits this Memorandum in Opposition

to Plaintiff's Motion for Preliminary Injunction.

## I. INTRODUCTION

While an undergraduate student, Plaintiff was charged with violating four provisions of

the LSU Code of Student Conduct (the "Code") by LSU's Office of Judicial Affairs. After two

investigations by the Office of Judicial Affairs and an independent hearing by a panel of faculty

and students, LSU found Plaintiff in violation of all four provisions. Plaintiff's request for the

imposition of a preliminary injunction focuses exclusively on the alleged facial overbreadth and

vagueness of one of those four provisions, ignoring the fact that on three separate occasions he

was found to have violated three other provisions of the Code. Plaintiff also asserts that LSU

deprived him of procedural due process by failing to give him sufficient notice of the charges against him and holding a hearing in his absence.

Plaintiff cannot meet his burden of establishing a likelihood of success on the merits of either of these claims. Accordingly, Plaintiff's motion for preliminary injunction should be denied.

## II.   FACTUAL BACKGROUND

### A.   THE UNDERLYING INCIDENT[1]

Plaintiff formerly attended LSU.[2] In the fall of 2006, Plaintiff, who at the time lived in an LSU family housing unit, began dating a female student who also lived in the LSU family housing units. Both Plaintiff and the female student are single parents. At some point during their relationship, the two began having difficulties and decided to separate. After the breakup, the female student reported to LSU's Office of the Dean of Students that Plaintiff had persistently harassed and threatened her through e-mail and social networking internet sites, such as Myspace and Facebook, as well as through physical confrontation. The female student requested that Plaintiff cease any further contact or communication.

Despite this request, the female student complained that Plaintiff was loitering outside her apartment and had been making repeated telephone calls to her. In response, the female student contacted the LSU campus police. She did not press charges against Plaintiff, but again requested Plaintiff to stop all contact. Campus police informed Plaintiff to cease all contact with the female student. A police report was prepared detailing these events. Upon receipt of the

---

[1] All of the facts articulated in this section, to the extent not attributed to another source, are taken from the transcript of the Office of Judicial Affairs hearing panel on Plaintiff's underlying disciplinary charges. A copy of the hearing transcript is attached as Exhibit A and will be introduced through an appropriate witness at the hearing on this matter. As set forth in Part I, above, Plaintiff has raised only a facial challenge to the Code. However, prompted by the inquiries made by this Court during the telephonic status conference with the parties, LSU has provided the Court with the underlying facts/conduct of Plaintiff forming the basis of his First Amendment claims.

[2] Document No. 1, ¶ 3.

police report and after additional conversations with the female student, the LSU Office of Judicial Affairs sent Plaintiff a charge letter outlining the four provisions of the Code Plaintiff allegedly violated.[3] Specifically, the charge letter specified that Plaintiff violated the following provisions:[4]

- 5.2, B.23: Extreme, outrageous or persistent acts, or communications that are intended or reasonably likely to harass, intimidate, harm, or humiliate another;

- 5.2, B.33: Violating any rule and/or regulation of the University, including but not limited to, administrative rules of campus offices;

- 5.2, B.34: Committing an act or attempting to commit an act on campus that would be in violation of city, parish, state, or federal law;

- 5.2, B.35: Attempting to commit or assisting with the commission or attempted commission of any of the foregoing listed offenses.

After receiving the charge letter, Plaintiff allegedly continued his harassment of the female student, through third-party intermediaries, by threatening an Office of Judicial Affairs investigation of his own into the female student's conduct, by threatening to interfere with her academic affairs and scholarship status, and threatening to damage her reputation within the LSU community.

### B. THE OFFICE OF JUDICIAL AFFAIRS INVESTIGATION AND HEARING PANEL

In January 2007, after investigating the alleged violations, the director of LSU's Office of Judicial Affairs, Dr. Eric Norman ("Dr. Norman"), found Plaintiff in violation of the Code and proposed a sanction of one year of disciplinary probation in addition to attendance in an anger management course.[5] Plaintiff rejected the proposed sanctions and requested a second

---

[3] *Id.*, ¶ 11.

[4] Exhibit 1 attached to the Deposition of Terrance Patrick Esfeller, dated January 13, 2009, at 20-25–21:11 ("Esfeller Depo."), attached as Exhibit B.

[5] *Id.*, ¶¶ 19, 20.

investigation into the alleged violations of the Code.[6]  After the requested second investigation, Plaintiff again was found in violation of the Code.[7]  For a second time, Plaintiff rejected the proposed sanctions and, pursuant to the procedure outlined in the Code, requested a full hearing into his alleged violations of the Code.[8]

On July 27, 2007, LSU's Office of Judicial Affairs held a hearing pursuant to Plaintiff's request.  Plaintiff chose not to attend the hearing.[9]  The hearing panel found Plaintiff in violation of the Code and confirmed the sanctions proposed earlier by the director of LSU's Office of Judicial Affairs (probation and an anger management course).[10]

In August 2007, Plaintiff appealed the decision of the hearing panel to LSU's Vice-Chancellor of Student Life and Admissions.[11]  That appeal was denied in September 2007.[12]  As a matter of last resort, Plaintiff sought review of the decision of the hearing panel by then-Chancellor Sean O'Keefe ("O'Keefe").  In December 2007, O'Keefe denied Plaintiff's request.[13]

Rather than comply with the results of the hearing panel and the sanctions it imposed, Plaintiff filed the above-captioned action against the Board of Supervisors for Louisiana State University (the "Board") and O'Keefe, in his official capacity, asserting claims stemming from the disciplinary proceedings conducted by LSU's Office of Judicial Affairs.

---

[6] *Id.*, ¶ 21.

[7] *Id.*, ¶ 27.

[8] *Id.*, ¶ 32.

[9] *Id.*, ¶ 34.

[10] *Id.*, ¶ 37.

[11] *Id.*, ¶ 42.

[12] *Id.*

[13] *Id.*, at ¶ 44.

## III.   **PROCEDURAL HISTORY**

As this action was originally filed, Plaintiff asserted claims against the Board of Supervisors for Louisiana State University (the "Board") and then-Chancellor Sean O'Keefe ("O'Keefe"), in his official capacity, for alleged violations of 42 U.S.C. § 1983, 42 U.S.C. § 1988, the First, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, and the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g.[14] In response, the Board and O'Keefe filed a Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[15] On May 30, 2008, this Court dismissed all claims against the Board and all of Plaintiff's monetary claims against O'Keefe, and further, dismissed all remaining claims against O'Keefe founded upon violations of the Fifth and Sixth Amendments of the Constitution and FERPA.[16] Thus, Plaintiff's only remaining claims are for injunctive relief, attorneys' fees, and costs against O'Keefe, in his official capacity, stemming from violations of the First and Fourteenth Amendments.[17]

On March 30, 2009, Plaintiff filed a Motion for Preliminary Injunction against Defendant seeking to enjoin enforcement of the Code on the grounds that it is vague and overbroad, thus impinging his First Amendment right to free speech.[18] Plaintiff's posturing of his constitutional challenge, however, is a facial attack to the overbreadth of the provision, and not one focused on the as-applied nature of the Code to Plaintiff's specific actions.[19] This distinction is significant

---

[14] *See generally id.*

[15] Document Nos. 10 and 10-2.

[16] Document No. 15.

[17] *See id.*

[18] Document No. 23.

[19] Specifically, Plaintiff only references his own conduct in passing when discussing the application of the Code. Instead, Plaintiff's entire argument focuses on generalities of unconstitutional overbreadth, as applied to the conduct of all LSU students. By definition, this is a facial challenge.

since the Plaintiff's burden in connection with a facial challenge is greater than the burden applied to an as-applied challenge. Further, Plaintiff seeks to enjoin Defendant from enforcing the sanction imposed by the Office of Judicial Affairs hearing panel against Plaintiff on the grounds that the proceedings violated his right to due process.[20] This sanction included one-year disciplinary probation and mandatory attendance in an anger management course.[21]

Finally, it should be noted that since the filing of this action, Plaintiff's status as a student at LSU has changed. As of the 2009 Spring semester, Plaintiff is no longer enrolled at LSU.[22] Further, Plaintiff has confirmed that he has no intention of re-enrolling.[23] While not having a direct impact on Plaintiff's claims as presented herein, this development eliminates the prospect that any allegedly unconstitutional provisions of the Code will affect Plaintiff in the future. Consequently, as a practical matter, the only relief available to Plaintiff is removal of the disciplinary sanction from his academic record. By asserting a facial challenge to a provision of the Code, Plaintiff seeks to expunge said provision from the Code affecting all LSU students, both past and present.

## IV.    LAW AND ARGUMENT

A plaintiff seeking a preliminary injunction must establish that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest.[24] As

---

[20] *See id.*

[21] Document No. 1, ¶¶ 19, 20.

[22] Esfeller Depo., at 9:8-17 (Exhibit B).

[23] *Id.* at 9:20–10:20. Instead, Plaintiff is enrolled in an online degree program through American Public University. *Id.* at 10:2-20.

[24] Winter v. Natural Resources Defense Council, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008).

detailed below, Plaintiff cannot show a likelihood of success on the merits, and thus, his motion for preliminary injunction should be denied.

## A. THE CODE IS NOT FACIALLY OVERBROAD

Although Plaintiff was charged with four separate violations of the Code, he challenges only the provision prohibiting "Extreme, outrageous or persistent acts, or communications that are intended or reasonably likely to harass, intimidate, harm, or humiliate another." A "facial challenge to a [regulation] is . . . the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [regulation] would be valid."[25] In terms of a facial challenge to the overbreadth of a regulation, the first task is to determine whether the regulation reaches a substantial amount of constitutionally protected conduct.[26] In making this determination, the court must consider the nature of the state's interest in the underlying regulation.[27] Further, a regulation is not unconstitutionally overbroad in instances where, despite some possibly impermissive application, the remainder of the regulation covers a range of easily identifiable and proscribed conduct.[28] Because the invalidation of a regulation for overbreadth is "strong medicine" and is generally disfavored,[29] the overbreadth doctrine is narrowly applied.[30]

---

[25] U.S. v. Salerno, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987).

[26] Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982); Broadrick v. Oklahoma, 413 U.S. 601, 610, 95 S. Ct. 2908, 37 L. Ed. 2d 830 (1973); DeJohn v. Temple Univ., 537 F.3d 301, 314 (3d Cir. 2008).

[27] Aiello v. City of Wilmington, Del., 623 F.2d 845, 854–55 (3d Cir. 1980).

[28] See Secretary of State of Md. v. Joseph H. Munson Co., Inc., 467 U.S. 947, 104 S. Ct. 2839, 81 L. Ed. 2d 786 (1984).

[29] See Broadrick, 413 U.S. at 610.

[30] See Los Angeles Police Dept. v. United Reporting Publishing Corp., 528 U.S. 32, 39, 120 S. Ct. 483, 145 L. Ed. 2d 451 (1999).

In *Broadrick v. Oklahoma*, three state employees were charged with violations of a state law that restricted the political activities of state employees during work hours.[31] The employees conceded that the statute was constitutional as applied to their own conduct, but nevertheless argued that the statute regulated protected as well as unprotected conduct, and therefore must be struck down as unconstitutionally overbroad. The Court, however, rejected this argument, reasoning that as sanctioned behavior moves from "pure speech" toward conduct, especially if that conduct—even if expressive—falls within the scope of otherwise valid regulations that reflect a legitimate interest in maintaining control over harmful, constitutionally unprotected conduct, the scrutiny given the regulation on a facially overbreadth challenge lessens severely.[32] Thus, the Court concluded that "where conduct and not merely speech is involved," the overbreadth of a regulation must be "not only real but substantial, as well, judged in relation to the statute's plainly legitimate sweep."[33]

1.     **The Code Does Not Reach a Substantial Amount of Constitutionally Protected Conduct**

As *Broadrick* makes apparent, a regulation must be substantially overbroad before it may be invalidated merely for facial overbreadth—determined by measuring the number of valid applications compared to the number of potentially invalid applications and examining the historic or likely frequency of the regulation's conceivably impermissible application.[34] Further,

---

[31] 413 U.S. 601.

[32] *Id.* at 615.

[33] *Id. See also Los Angeles Police Dept.*, 528 U.S. 32; Young v. Am. Mini-Theatres, 427 U.S. 50, 96 S. Ct. 2440, 49 L.E.2d 310 (1976).

[34] *See generally id*; *Aiello*, 623 F.2d 845.

the court must look to the type of conduct sought to be regulated and the underlying nature of the state's interest in enforcing the regulation.[35]

In *Broadrick*, discussed *infra*, the Supreme Court—applying the substantial overbreadth test—concluded that the statute at issue need not be discarded "because some persons' arguably protected conducted may or may not be caught up or chilled by the statute."[36] In reaching this conclusion, the Court noted that the statute sought to regulate the activity in an even-handed neutral manner and that the employees' conduct was clearly within the statute's permissible scope.[37]

Further, in *Aiello v. City of Wilmington, Delaware*, the Third Circuit—also applying the substantial overbreadth test—held that provisions of the city's Bureau of Fire regulations were not substantially overbroad.[38] There, the plaintiff, a city fireman, was suspended from the Bureau of Fire after being arrested for burglary—even though the charges were dropped because

---

[35] *See Aiello*, 623 F.2d at 854–55. In *College Republicans at San Francisco State University v. Reed*, the court framed "substantially overbroad" analysis this way:

> One way to conceptualize this task is to envision two spheres, one inside the other. Both spheres contain activity that reasonable people would understand is subject to control by the regulation that is being examined to determine if it is overbroad. The outer, larger sphere contains (captures) *all* of the activity that falls within the reasonably construed reach of the regulation. In contrast, the inner, smaller sphere, contains only some of the activity that falls within the reach of the regulation; what sets the inner sphere apart is that it contains only activity that it is perfectly lawful for the government to restrict or burden through the kind of regulation that is being challenged. So all the speech or conduct that falls within the inner sphere is speech or conduct that the Constitution permits the government to regulate. The speech or expressive conduct that falls within the outer, larger sphere, but that is not within the inner sphere, is the speech or conduct that is covered by the challenged regulation but that the First Amendment prohibits the government from restricting or burdening.
>
> After determining the size of each of these two spheres, we compare them. If the inner sphere takes up most of the space within the outer sphere, the regulation is not overbroad. But if the outer sphere is substantially larger than the inner sphere, the law is overbroad in violation of the First Amendment and must be stricken.

523 F. Supp. 2d 1005, 1113–14 (N.D. Cal. 2007).

[36] *Broadrick*, 413 U.S. at 618.

[37] *Id.* at 616–18.

[38] 623 F.2d 845.

it was determined the plaintiff was intoxicated and lacked the sufficient intent to commit a crime. Specifically, the plaintiff was charged with violations of provisions regulating the expected conduct of firemen, whether on or off duty. Addressing the plaintiff's challenge of facial overbreadth, the court first determined that the city had a legitimate and substantial interest in regulating the conduct in question because a fire department must address particular concerns of efficiency, discipline, and public trust.[39] Therefore, the court reasoned that the provisions in question were substantially aimed at preventing conduct that could reasonably be expected to have negative effects on the city's legitimate concerns.[40] Concerning two additional rules that arguably had overbroad applications, the court concluded that "the number of clearly valid applications . . . clearly outweighs the conceivably impermissible application. Thus, facial overbreadth of these rules, if any, fades significantly when compared with their otherwise legitimate sweep."[41]

Similarly, the provision of the Code at issue here does not reach a substantial amount of protected conduct. Rather, it reaches only that conduct which is necessary to further its legitimate interest in promoting and ensuring a healthy and safe learning environment for all students. Herein, Plaintiff harassed and threatened a fellow student through e-mail, social networking internet sites, telephone calls, through third parties, and direct physical confrontation. Plaintiff's conduct clearly was not in line with promoting a healthy and safe learning environment. Should conduct such as Plaintiff's not be proscribed, the result would be a negative effect on LSU's legitimate interest—and thus, a negative effect on the overall learning

---

[39] *Id.* at 855.

[40] *Id.*

[41] *Id.* at 856.

environment for all students. Further, any facial overbreadth of this provision, like in *Aiello*, fades significantly when compared to its otherwise legitimate application.

### 2. LSU Has a Legitimate Interest in the Enforcement of the Code

While the Supreme Court has recognized that "[t]he college classroom with its surrounding environs is peculiarly the marketplace of ideas,"[42] the First Amendment rights of students must be analyzed in "light of the special characteristics of the school environment."[43] As a result, a university differs from typical public forums.[44] Commensurate with its educational mission to provide an environment that is safe and conducive to learning, educational authorities can impose reasonable regulation on student speech and conduct.[45] For example, as one appellate court has stated:

> [W]e see little basically or constitutionally wrong with flexibility and reasonable breadth, rather than meticulous specificity, in college regulations relating to conduct. Certainly these regulations are not to be compared with the criminal statute. They are codes of general conduct which those qualified and experienced in the field have characterized not as punishment but as part of the educational process itself and as preferably to be expressed in general rather than specific terms.[46]

Specifically, these institutions may prohibit and punish speech and conduct to prevent a material disruption of the educational process, to create substantial order, or to prevent the invasion of the rights of others—as this conduct is "not immunized by the constitutional guarantee of freedom of speech."[47] In sum, a university has "the right to exclude certain First

---

[42] Healy v. James, 408 U.S. 169, 181, 92 S. Ct. 2238, 33 L. Ed. 2d 266 (1972).

[43] Murakowski v. University of Delaware, 575 F. Supp. 2d 571, 587 (D. Del. 2008) (quoting Tinker v. Des Moines Ind. Comm. Sch. Dist., 393 U.S. 503, 506 89 S. Ct. 733, 21 L. Ed. 2d 731 (1969)).

[44] *Id.*

[45] *See id.* at 587, 591.

[46] Esteban v. Cent. Mo. State College, 415 F.2d 1077, 1088 (8th Cir. 1969).

[47] *Murakowski*, 575 F. Supp. 2d at 587, 591.

Amendment activities that violate reasonable campus rules or substantially interfere with the opportunity for other students to obtain an education."[48] Whatever intrusions upon potentially protected conduct may occur are marginal when compared with the Code's primary thrust aimed at furthering LSU's legitimate interest in ensuring a safe and healthy learning environment for all its students.

### 3.    Plaintiff Misconstrues Federal Constitutional Case Law on this Issue

Plaintiff's entire memorandum is tainted by the mistaken premise that his constitutional rights in a school setting are the same as in a typical public forum.[49] As illustrated above, this assumption is misplaced. By prohibiting conduct that "harass[es], intimidate[s], harm[s], or humiliate[s] another," the Code protects against the invasion of the rights of others, thus promoting its educational mission of providing a positive learning atmosphere. Because a university needs to "be able to impose discipline for a wide variety of unanticipated conduct that may disrupt the educational process, 'school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions.'"[50] Rather, a university has inherent authority and wide latitude to maintain order and discipline in students through the formulation of rules and regulations for standard of conduct to which it can expect its students to generally adhere.[51]

Further, Plaintiff misapplies relevant case law in an attempt to demonstrate how the provision of the Code at issue is overbroad. Specifically, Plaintiff sets forth the following unremarkable precepts:

---

[48] *Id.* at 587 (citing *Healy*, 408 U.S. at 188–89).

[49] Document No. 23-2, p. 4 (citing *Tinker* with approval, "It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.")

[50] Cady v. S. Suburban College, 310 F. Supp. 2d 997, 1000 (N.D. Ill. 2004) (quoting Fuller v. Decatur Pub. Sch. Bd. of Educ. Sch. Dist. 61, 251 F.3d 662, 667 (7th Cir. 2001)). *See also* Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 686, 106 S. Ct. 3159, 92 L. Ed. 2d 549 (1986).

[51] *Esteban*, 415 F.2d at 1088, 1089.

- Speech cannot be prohibited simply because it offends someone or a large group of people.[52]

- Speech cannot be prohibited based on the "mere desire to avoid the discomfort and unpleasantness that always accompanies an unpopular viewpoint."[53]

- "[P]ublic expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers."[54]

- It is not enough that the speech offend some listener.[55]

- Speech cannot be prohibited "solely on the motive impact that its offensive content may have on a listener."[56]

LSU does not take issue with any of the above legal precepts. However, after espousing these general principles, Plaintiff states that the wording of the Code is "almost identical" to the student codes that were found to be overbroad in the cited cases.[57] Plaintiff's conclusion, however, is misplaced. The student codes in the cases cited in Plaintiff's memorandum focus on the subjective interpretation of conduct by the listener—however irrational. These are viewpoint-based regulations. Rather than focusing on the subjective interpretation of the listener, however, the provision of the Code at issue here focuses on the actor's actual conduct itself from an objective standard. Consequently, the emotive impact the conduct may have on the listener is immaterial to the determination of whether the conduct itself is reasonably likely to "harass, intimidate, harm, or humiliate another." This significant distinction highlights the fact that the Code does not run afoul of the legal precepts Plaintiff relies upon.

---

[52] Document No. 23-2, p. 5.

[53] Document No. 23-2, p. 5 (quoting *Tinker*, 393 U.S. at 509).

[54] Document No. 23-2, p. 6 (quoting Street v. New York, 394 U.S. 576, 592, 89 S. Ct. 1354, 22 L. Ed. 2d 572 (1969)).

[55] Document No. 23-2, p. 6.

[56] Document No. 23-2, p. 8 (quoting Bair v. Shippensburg Univ., 280 F. Supp. 2d 357, 371 (M.D. Pa. 2003)).

[57] Document No. 23-2, p. 9.

**4.      If the Code is Deemed Overbroad, it is Susceptible to a Reasonable Limiting Instruction**

Before making a declaration of unconstitutionality, the court must determine whether the regulation is susceptible to a reasonable limiting construction, since "the elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality."[58]      Put another way, "courts will not use the overbreadth doctrine to completely remove a law from the legal landscape if they can identify a construction of the law that would narrow its reach so that it would pass constitutional muster."[59]

In *College Republicans at San Francisco State University v. Reed*, the court addressed whether a provision of the student conduct code was susceptible to a limiting construction before being declared unconstitutionally overbroad.[60]      The provision at issue proscribed "conduct that threatens or endangers the health or safety of any person within or related to the university community, including physical abuse, threats, humiliation, harassment, or sexual misconduct." In finding a limiting construction, the court reasoned that the provision consisted of both a central and dependent clause.[61]      The lead or central clause identified the category of conduct proscribed: "conduct that threatens or endangers the health or safety of any person."  Then, the secondary or dependent clause listed the types of conduct proscribed—including humiliation and harassment—but, importantly, as the court noted, only "when the specific form they take involves a threat to or endangerment of the health or safety to any person within the or related to the university community."[62]      Therefore, the court concluded that "humiliation" and

---

[58] *Broadrick*, 413 U.S. at 615, 617, n.16.  *See also* Screws v. U.S., 325 U.S. 91, 98, 65 S. Ct. 1031, 89 L. Ed. 1495 (1945).

[59] *College Republicans*, 523 F. Supp. 2d at 1013 (citing *Broadrick*, 413 U.S. at 614).

[60] *Id.* at 1022.

[61] *Id.*

[62] *Id.*

"harassment" in whatever form are not proscribed, but rather, only the sub-category of this type of conduct that threatens the health and safety of others.[63] Further, the court noted that this narrowed construction was supported by the authors' intent—namely, had they wanted to proscribe all forms of humiliation and harassment, they could have done so by simply not incorporating any limitations.[64] Thus, the court held that the plaintiffs could not show a likelihood of success on the merits and denied their motion for preliminary injunction.[65]

Taking a similar approach with the provision at issue here, a limiting construction is readily apparent. As written, the provision prohibits "[e]xtreme, outrageous or persistent acts, or communications that are intended or reasonably likely to harass, intimidate, harm, or humiliate another." The central clause indentifies the proscribed conduct as "extreme, outrageous or persistent acts, or communications." Standing alone, this clause might be overbroad. However, the secondary clause lists the specific types of "extreme, outrageous or persistent acts, or communication" proscribed: only those "that are intended or reasonably likely to harass, intimidate, harm, or humiliate another"—thus creating a sub-category of the prohibited conduct. Furthermore, like *College Republicans*, this narrowed construction is supported by the fact that the drafters of the Code could have proscribed all "extreme, outrageous or persistent acts, or communication" but chose not to do so. With this limited construction in mind, Plaintiff cannot show a likelihood of success on the merits, and therefore, his motion for preliminary injunction should be denied.

---

[63] *Id.*

[64] *Id.*

[65] *Id.* at 1022–23.

## B. THE CODE IS NOT UNCONSTITUTIONAL AS-APPLIED TO PLAINTIFF'S SPECIFIC CONDUCT

Despite Plaintiff's attempt to lump all speech and conduct together under one banner of protection, while completely ignoring the application of the Code to his own actions, the sanctioned conduct in the instant matter was certainly not conduct entitled to protection. Rather, Plaintiff's conduct fell directly within the parameters of what the Code was designed to do— provide a safe and healthy educational environment by protecting its students from the harmful actions of others. Plaintiff's conduct was subject to discipline not because of the expressive idea his conduct communicated, but rather because his conduct facilitated the harassment and threats of another student through e-mail, social networking internet sites, telephone calls, through third parties, and direct physical confrontation. Such action is not protected conduct and may be proscribed.

LSU has not only a legitimate, but a compelling, interest in providing a healthy and safe learning environment for all its students. The Code helps ensure this purpose by proscribing conduct that "harass[es], intimidate[s], harm[s], or humiliate[s] another." Further, it is important to note another key distinction here: while Plaintiff argues that *some* conduct proscribed by the Code may fall within the protections of the First Amendment, he cannot argue that *his specific* conduct constitutes a protected activity since "there is no question that non-expressive, physically harassing conduct is entirely outside the ambit of the free speech clause."[66]

---

[66] *See* DeJohn v. Temple Univ., 537 F.3d 301, 316 (3d Cir. 2008) (citing Saxe v. State College Area Sch. Dist., 240 F.3d 200, 206(3d Cir. 2001)). Plaintiff's *some* conduct argument is considered a facial attack on the Code and is discussed in more detail, *infra*, Part IV.A

## C. THE CODE IS NOT "VOID FOR VAGUENESS"

In his memorandum, Plaintiff makes four passing assertions that the Code is too vague to survive constitutional scrutiny.[67] As discussed above, these references are limited to the following provision of the Code:

> Extreme, outrageous or persistent acts, or communications that are intended or reasonably likely to harass, intimidate, harm, or humiliate another.

However, Plaintiff fails to articulate the constitutional standard or otherwise analyze his vagueness claim. Despite these deficiencies, Defendant assumes that Plaintiff has raised not only an overbreadth claim but also a due process "void for vagueness" claim.

In the penal context, under which the void for vagueness doctrine arose, a statute is unconstitutionally vague if it: (1) fails to adequately define a criminal offense "with sufficient definiteness that ordinary people can understand why conduct is prohibited;" and (2) is not of sufficient clarity to prevent arbitrary and discriminatory enforcement.[68] However, as discussed in detail above, in connection with school disciplinary rules, courts addressing the issue refuse to hold such rules to the same due process standards for vagueness as criminal statutes.[69] In *Murray vs. West Baton Rouge School Board*,[70] in addressing disciplinary rules prohibiting "willful disobedience," "immoral or vicious practices," and conduct that "disturbs the school", the Fifth Circuit explained the applicable distinction:

> The statutory proscriptions at issue here are unquestionably imprecise. It is clear, however, that school disciplinary codes could not be drawn with the same precision as criminal codes and

---

[67] Document No. 23-2, pp. 4, 12.

[68] *See* Kolender v. Lawson, 461 U.S. 352, 357, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983).

[69] *See* Black Coalition v. Portland School District No. 1, 484 F.2d 1040, 1044 (9th Cir. 1973); Murray v. West Baton Rouge Parish School Board, 472 F.2d 438, 441 (5th Cir. 1973); Norton v. Discipline Committee, 419 F.2d 195 (6th Cir. 1969); *Esteban*, 415 F.2d 1077.

[70] 472 F.2d 438.

that some degree of discretion must, of necessity, be left to public
school officials to determine what forms of misbehavior should be
sanctioned.[71]

Consequently, given the latitude afforded school disciplinary policies, a challenge to a
university disciplinary policy should be upheld only if a reasonable student of ordinary
intelligence who read the policy could not understand what conduct it prohibited.[72] Plaintiff, as a
college-educated man in this thirties, certainly satisfies this standard. The contested provision
proscribes conduct that *harasses*, *intimidates*, *harms*, or *humiliates* another student. It is beyond
comprehension that Plaintiff can gain admittance to a university but not understand the meaning
of such common words. Additionally, federal case law has addressed vagueness challenges to
these words in non-school settings, finding them constitutionally permissible.[73] Given the
additional latitude granted to school discipline policies in addition to the common and generally
accepted meanings of the contested words, Plaintiff's void for vagueness challenge must fail.

### D. LSU PROVIDED PLAINTIFF WITH MORE THAN THE REQUIRED PROCEDURAL DUE PROCESS

Plaintiff has raised two challenges to his disciplinary proceedings both of which, he
claims, have deprived him of constitutionally guaranteed procedural due process. Plaintiff first
alleges that he was not provided with sufficient "notice" of the charges against him, precluding
him from preparing his own defense.[74] Second, Plaintiff alleges that he was deprived of his due

---

[71] *Id.* at 442 (internal citations omitted).

[72] *Broadrick*, 413 U.S. at 608.

[73] *See* U.S. v. Red Frame Parasail, Buckeye Model Eagle 503 (serial number 4159), 160 F. Supp. 2d. 1048, 1059 (D. Ariz. 2001) ("The court concludes that 'harass' is not unconstitutionally vague."); US v. Bowker, 372 F.3d 365 (6th Cir. 2004), *vacated on other grounds*, 543 U.S. 1182, 125 S. Ct. 1420, 161 L. Ed. 2d 181 (2005) ("We also reject Bowker's argument that the stalking and telephone harassment statutes' failure to define words like 'harass' and 'intimidate' render them void for vagueness. As noted by the Court in *Staley,* the meaning of these words 'can be ascertained fairly by reference to judicial decisions, common law, dictionaries, and the words themselves because they possess a common and generally accepted meaning.'") (quoting Staley v. Jones, 239 F.3d 769 (6th Cir. 2001)).

[74] Document No. 23-2, p. 10.

BR.581257.1 Case 3:08-cv-00063-JTT-JDK   Document 25   05/08/09   Page 18 of 27

process rights when LSU proceeded with his disciplinary hearing in his absence.[75] Contrary to his conclusions, Plaintiff was afforded more than the required due process in connection with his disciplinary charges.

### 1.     Applicable Legal Precepts

In a school setting, determining the required due process afforded a student depends on whether the university action is considered "academic" or "disciplinary" in nature.[76] Academic sanctions customarily are left to academic channels and do not require a hearing as a matter of constitutional right.[77] However, school disciplinary sanctions require additional safeguards to the student. In *Goss v. Lopez*, the Supreme Court outlined the constitutional standard for procedural due process in a school disciplinary setting.[78]

In *Goss,* the Supreme Court held that a student must be given "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story."[79] The Court continued, stating that "[t]here need be no delay between the time 'notice' is given and the time of the hearing. We hold only that . . . the student first be told what he is accused of doing and what the basis of the accusation is."[80] The Court also stopped short of requiring that the student be given "the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident."[81] As long as the student "at least

---

[75] *Id.*

[76] Goss v. Lopez, 419 U.S. 565, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975).

[77] Wheeler v. Miller, 168 F.3d 241, 248 (5th Cir. 1999).

[78] *Goss*, 419 U.S. 565.

[79] *Id.* at 581.

[80] *Id.* at 582.

[81] *Id.* at 583.

ha[s] the opportunity to characterize his conduct and put it in what he deems the proper context," due process has been satisfied.[82]

Although *Goss* involved a challenge to a disciplinary decision in a high school, courts that have considered the issue have concluded that *Goss* provides the due process standards applicable to university disciplinary proceedings.[83] Consequently, the procedural due process required under *Goss* is the constitutional standard by which LSU's actions should be judged in this case. Applying *Goss*, LSU was required to provide Plaintiff with (1) oral or written notice of the charges against him; and (2) an opportunity to present his side of the story.[84]

### 2. Due Process Requires Only "Notice" Sufficient to Allow Plaintiff to Present a Defense

Plaintiff asserts that he "was never given notice of what the exact charges brought by defendant against him were."[85] Again, however, Plaintiff fails to articulate the constitutional standard for notice. LSU was not required to provide to Plaintiff every conceivable detail of the charges against him, as Plaintiff seemingly argues. The due process notice requirement was addressed in detail by the Fifth Circuit in *Jenkins v. Louisiana State Board of Education*.[86] In *Jenkins*, six students filed suit to enjoin their suspensions handed down by a state college, in part, on the basis that they were not provided adequate notice of the disciplinary charges brought

---

[82] *Id.* at 584.

[83] *See, e.g.*, Flaim v. Medical College of Ohio, 418 F.3d 629 (6th Cir. 2005) (applying *Goss* standard in context of University disciplinary proceeding); Than v. Texas Medical School at Houston, 188 F.3d 633, 635 (5th Cir. 1999) (stating that federal due process rights are fleshed out in *Goss*); Nash v. Auburn Univ., 812 F.2d 655 (11th Cir. 1987) (same); Hill v. Bd. of Trustees of Michigan St. Univ., 182 F. Supp. 2d 621, 627–30 (S.D. Mich. 2001) (apply *Goss* standard in university suspension case); Nguyen v. Univ. of Louisville, 2006 U.S. Dist. LEXIS 20082, **12-13 (April 14, 2006) (under *Goss*, university's emergency suspension of student pending outcome of disciplinary proceedings did not violate procedural due process).

[84] As *Goss* makes clear, this Court must only concern itself with the minimum procedural safeguards. The fact that LSU has additional mechanisms in place to protect and safeguard its students is immaterial, as is whether LSU satisfied those additional safeguards. Defendant must only be judged as to the procedural standard espoused in *Goss*.

[85] Document No. 23-2, p. 10.

[86] 506 F.2d 992 (5th Cir. 1975).

against them.[87]  Specifically, the students in that case received a letter notifying each student that

he was being charged with (1) inciting a riot; (2) disturbing the peace; and (3) criminal damage

to public property.[88]  At a later date, they were each presented with a document entitled

"Information for Disciplinary Hearing Board" which listed the three different college and state

board of education regulations the students were alleged to have violated.[89]  The students argued

that the notice was insufficient since the documents failed to detail the exact charges of which

they ultimately were found guilty.[90]  However, the Fifth Circuit held that general notice received

by the students was sufficient for purposes of due process.[91]  In reaching its holding, that court

stated the following principles that are directly relevant to the instant matter:

> We realize that the oft-quoted dictum in Dixon says that the notice
> should contain a statement of 'specific charges and grounds' and
> that a 'student cannot be punished on the basis of some ground
> other than that stated in the written charge.'  Judge Rives also
> recognized, however, that 'the minimum procedural requirements
> necessary to satisfy due process depend upon the circumstances
> and the interest of the parties involved.'  The standards of
> procedural due process are not absolutes. Due process in the
> context of this case is not to be equated with that essential to a
> criminal trial and the notice of charges need not be drawn with the
> precision of a criminal indictment.
>
> ***
>
> Although here the notice given to appellants could undoubtedly
> have been drafted with more precision, the charges do include
> numerous allegations of group or concerted actions. The document
> entitled 'Information of Disciplinary Hearing Board' clearly sets
> forth the type of conduct included in the Board's finding of
> conspiracy.[92]

---

[87] *Id.*

[88] *Id.* at 997.

[89] *Id.* at 998.

[90] *Id.*

[91] *Id.* at 999.

[92] *Id.* at 1000.

Additionally, in reaching the conclusion that notice was sufficient in that case, the Fifth Circuit highlighted the fact that "[a] reading of the record clearly reveals that [the students] understood the nature of the charges against them."[93] Given the holding and rationale in *Jenkins*, notice was sufficient in this case if LSU provided Plaintiff with notice identifying the "type of conduct" at issue and Plaintiff "understood of the nature of the charges" against him. In this case, both prongs are satisfied.

Plaintiff admits that he received a charge letter on November 22, 2006 that identified the four charges brought against him.[94] Plaintiff also admits that he had one-on-one meetings with members of the LSU Office of Judicial Affairs to discuss the charges on November 27, 2006, December 5, 2006, January 8, 2007, and March 5, 2007.[95] Additionally, Plaintiff had knowledge of the campus police report that precipitated the disciplinary proceedings at issue.[96] Finally, in both his original complaint and his memorandum in support of his request for preliminary injunction, Plaintiff concedes that even though he chose not to attend the disciplinary hearing, his attorney was prepared to argue his defense in his absence.[97] Taken collectively, the facts of this case indicate that Plaintiff was more than sufficiently apprised of the type of conduct he was being charged with and had a sufficient understanding of the nature of the charges. Consequently, Plaintiff's claim based on a lack of sufficient notice should fail.

---

[93] *Id.* at 1000.

[94] Document No. 23-2, p. 1.

[95] Document No. 23-2, pp. 1, 2.

[96] Document No. 23-2, p. 1.

[97] Document No. 23-2, p. 3; Document No. 7, ¶ 37.

### 3. LSU Provided Plaintiff with the Opportunity to Present His Defense to the Charges Against Him.

Plaintiff asserts that he was denied "the right to be heard at a hearing" in connection with his disciplinary charges.[98] A more accurate characterization of the events would be that Plaintiff *chose* not to attend the disciplinary hearing he requested. The following timeline of facts are significant and highlight the lengths to which LSU went through to provide Plaintiff with the opportunity to present his defense:

- November 22, 2006 – Plaintiff sent disciplinary charge letter.[99]

- November 27, 2006 – Plaintiff alleges that he met with Dr. Norman to tell his side of the story.[100]

- January 8, 2007 – Dr. Norman finishes investigation, finds Plaintiff in violation of the code, and proposes sanctions.[101]

- March 5, 2007 – LSU provides Plaintiff with a second investigation into the charged disciplinary violations.[102]

- Plaintiff, again, was found in violation of the LSU Code of Conduct. This time, however, the proposed sanction was less severe than the sanction proposed by Dr. Norman.[103]

- Plaintiff rejects the proposed lesser sanction and requests a hearing panel.[104]

- April 9, 2007 – LSU begins to request dates from Plaintiff for the scheduling of the hearing panel.[105]

---

[98] Document No. 23-2, p. 10.

[99] Document No. 23-2, p. 1.

[100] Esfeller Depo., at 22:6-9 (Exhibit B).

[101] Document No. 23-2, p. 2.

[102] *Id.*

[103] *Id.*

[104] *Id.*

[105] Exhibit 4 to Exhibit B.

- June 25, 2007 – Plaintiff informed LSU that he worked during the summer and requested that the hearing panel not be scheduled during the summer.[106]

- July 12, 2007 – LSU sends notice to Plaintiff that his hearing panel is scheduled for July 27, 2007.[107]

- July 16, 2007 – LSU leaves second notice of July 27, 2007 hearing panel at Plaintiff's residence.[108]

- July 26, 2007 – LSU sends third notice of July 27, 2007 hearing panel to Plaintiff.[109]

- July 26, 2007 – At 4:56 p.m., Plaintiff sends an email to LSU stating that he would not attend the hearing panel scheduled for the following day.[110]

The above timeline of facts illustrates without question that Plaintiff requested a hearing panel and knew the date of the hearing panel more than two weeks prior to the hearing. Moreover, Plaintiff does not dispute that he received three different notifications of the date of the hearing from LSU and chose to ignore those notifications until the close of business the day before the hearing.[111] LSU understands the difficult position Plaintiff obviously feels he was in by having to choose between going to work or attending the hearing panel he requested. However, characterizing that choice as a deprivation of a constitutional right to a hearing ignores the facts of this case. Plaintiff was given the hearing he requested and chose not to attend. LSU's actions in this regard satisfied constitutional due process requirements.

Of course, the above discussion assumes that a hearing was even required. As set forth above in Part IV.D.1, the *Goss* court stopped short of requiring that the student be given "the

---

[106] Esfeller Depo., 37:15-18 (Exhibit B).

[107] Exhibit 11 to Exhibit B.

[108] Esfeller Depo., at 37:3-5 (Exhibit B).

[109] Exhibit 12 to Exhibit B.

[110] Exhibit 13 to Exhibit B.

[111] Esfeller Depo., at 37:19–38:8 (Exhibit B).

opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident."[112] As long as the student "at least ha[s] the opportunity to characterize his conduct and put it in what he deems the proper context," due process has been satisfied.[113]  In this case, Plaintiff had and took advantage of several opportunities to characterize his conduct and put it in the proper context. Plaintiff readily admits that his November 27, 2007 meeting with Dr. Norman was his opportunity to tell his side of the story.[114]  Plaintiff also admits that he discussed his conduct with LSU officials on three other occasions.[115]  Clearly, Plaintiff's multiple meetings with LSU wherein he was able to tell his side of the story in addition to the opportunity for Plaintiff to defend himself at a disciplinary proceeding he requested collectively satisfied the constitutional standard articulated in *Goss*.

## V.    **CONCLUSION**

In order to prevail on his motion for preliminary injunction, Plaintiff must prove a likelihood of success on the merits of each of his claims. As shown above, this is a burden Plaintiff cannot meet. First, the provision of the Code at issue is not facially overbroad, as it does not reach a "substantial amount" of constitutionally protect content and is squarely aimed at ensuring a healthy and safe learning atmosphere in furtherance of LSU's legitimate interest of promoting its educational mission. Courts are clear that a university has the right to impose rules to prevent the disruption of the educational process. The provision in question accomplishes this purpose, contrary to Plaintiff's assertion, by focusing exclusively on the actual conduct of the actor, and not the effect the conduct has on the listener. For these reasons, Plaintiff's First Amendment challenge must fail.

---

[112] *Goss*, 419 U.S. at 583.

[113] *Id.* at 584.

[114] Esfeller Depo., at 22:2-9 ("I told them my side of the story.") (Exhibit B).

[115] Document No. 23-2, pp. 1, 2.

Further, Plaintiff alleges that Defendant violated his procedural due process rights by failing to give him sufficient notice of the charges against him and holding a hearing in his absence. Contrary to Plaintiff's contentions, Defendant provided more than the constitutionally-required procedural due process afforded a student in a school disciplinary setting. Plaintiff received both written and oral notice of the charges against him on no fewer than five separate occasions—through correspondence and meetings with the Office of Judicial Affairs. At each of these meetings, Plaintiff was allowed the opportunity to present his side of the story, which combined with oral or written notice of the charges, is all that is required to satisfy the procedural due process standards. The fact that Plaintiff was not present at his hearing—a circumstance created solely by his own choosing—is of no consequence in the determination of whether Plaintiff was afforded the necessary due process, as presence at one's hearing panel (or even holding a hearing panel at all) is not included within the constitutional framework of procedural due process.

For these reasons and those presented in more detail above, Defendant avers that Plaintiff

cannot meet his burden to justify the granting of a preliminary injunction. As such, Plaintiff's motion should be denied.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:     /s/ Taylor S. Carroll
            H. Alston Johnson III, Bar Roll No. 7293
            Taylor S. Carroll, Bar Roll No. 28522
            II City Plaza
            400 Convention Street • Suite 1100
            Baton Rouge, Louisiana 70802-5618
            P.O. Box 4412
            Baton Rouge, Louisiana 70821-4412
            Telephone: (225) 346-0285
            Telecopier: (225) 381-9197
            Email: johnsona@phelps.com
                        carrollt@phelps.com

ATTORNEYS FOR DEFENDANT SEAN O'KEEFE

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2008, a copy of the foregoing *Defendant's Opposition to Motion for Preliminary Injunction* was filed with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to Donald Carl Hodge, Jr., counsel for Plaintiff Terrance Patrick Esfeller.

            /s/ Taylor S. Carroll
            Taylor S. Carroll, Bar Roll No. 28522
            Phelps Dunbar LLP